IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

—————————————————————————————————————————

SID MIKE 99, L.L.C.,            )
                                )
        Plaintiff,              )
                                )
v.                              )      No. 2:07-CV-02453-STA-dkv
                                )
SUNTRUST BANK,                  )
                                )
        Defendant.              )

—————————————————————————————————————————

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
COMPEL AND/OR FOR *IN CAMERA* INSPECTION

—————————————————————————————————————————

Before the court is the July 2, 2009 motion of the plaintiff, Sid Mike 99, LLC ("Sid Mike"), pursuant to Rule 37 of the Federal Rules of Civil Procedure to compel the defendant, SunTrust Bank ("SunTrust"), to disclose documents it has withheld under claims of attorney-client privilege.  SunTrust filed a timely response in opposition to the motion.  The motion was referred to the United States Magistrate Judge for determination.  After consideration of the parties' respective memorandums in support of their arguments, Sid Mike's motion is granted in part and denied in part.

I.  PROCEDURAL AND FACTUAL BACKGROUND

In 2006, Sid Mike owned Blockbuster Video franchise stores in multiple states throughout the Southeast.  (Doc. No. 34, First Am. Compl. ¶ 4.)  Sid Mike maintained bank accounts at SunTrust Bank relating to these franchises.  (*Id.* ¶ 5.)  Southern Stores, Inc. ("Southern Stores") managed the day-to-day operations of these

stores for Sid Mike. (*Id.*) As Sid Mike's agent, Southern Stores maintained exclusive control of the accounts at SunTrust in order to operate the Blockbuster stores. (*Id.*) During 2006, a dispute arose between Sid Mike and Southern Stores regarding the control of certain bank accounts at SunTrust Bank. (*Id.* ¶ 7.) On March 30, 2006, Sid Mike instructed SunTrust to immediately cease honoring checks or withdrawal requests on these accounts unless such checks or withdrawals were approved by a member of Sid Mike. (*Id.* ¶ 8.) On April 4, 2006, SunTrust confirmed in writing by e-mail that it had placed a hold on the Sid Mike accounts. (*Id.* ¶ 10.) Sid Mike now claims that despite this action, SunTrust allowed unauthorized withdrawals from the SunTrust accounts. (*Id.* ¶ 12.)

On January 2, 2009, Sid Mike served requests for production of documents on SunTrust. (Doc. No. 60, SunTrust Bank's Opp'n to Sid Mike's Mot. to Compel and/or for *In Camera* Inspection at 2.) Pursuant to these requests, SunTrust produced copies of most of the requested documents, as well as a privilege log identifying documents SunTrust withheld under claims of attorney-client privilege and work-product doctrine. (*Id.*) Sid Mike now moves to compel production of the documents identified on SunTrust's privilege log as attorney-client privileged on the grounds that SunTrust has not carried its initial burden of showing the attorney-client privilege applies. (Doc. No. 57, Mot. to Compel and/or for *In Camera* Inspection at 1.) Sid Mike also argues that

SunTrust's privilege log contains insufficient information to satisfy the requirements for asserting attorney-client privilege. (Doc. No. 57-2, Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection at 1.)

## II.   ANALYSIS

Based on the parties' diversity of citizenship and the amount in controversy for which State law supplies the rule of decision, any claim of privilege "shall be determined in accordance with State law." FED. R. EVID. 501; *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006).   Tennessee's attorney-client privilege is recognized at TENN. CODE ANN. § 23-3-105, and states:

> No attorney, solicitor or counselor shall be permitted, in giving testimony against a client, or person who consulted the attorney, solicitor or counselor professionally, to disclose any communication made to the attorney, solicitor or counselor as such by such person, during the pendency of the suit, before or afterwards, to the person's injury.

TENN. CODE ANN. § 23-3-105.   This statute embodies the original purpose behind the privilege as it existed at common law.   *Royal Surplus Lines Ins. Co. v. Sofamor Danek Group, Inc.*, 190 F.R.D. 463, 468 (W.D. Tenn. 1999).   Its purpose "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

The privilege, however, does not cover all communications

3

between a client and his or her attorney.  *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 213 (Tenn. Ct. App. 2002).  For the privilege to apply,

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Humphreys, Hutcheson & Moseley v. Donovan*, 568 F. Supp. 161, 175 (M.D. Tenn. 1983) (construing TENN. CODE ANN. § 23-3-105).  Further, the privilege also protects an attorney's communications to the extent that disclosure, either directly or indirectly, would reveal the substance of the client's confidential communication.  *Burke v. The Tennessee Walking Horse Breeders' & Exhibitors' Assoc.*, No. 01A01-9611-CH-00511, 1997 WL 277999, at *11 (Tenn. Ct. App. May 28, 1997).

The Supreme Court, in *Upjohn Co. v. United States*, held that the attorney-client privilege extends to communications qualifying as such when made between corporate counsel and employees of the client corporation.  449 U.S. at 390.  In keeping with the original justifications for the attorney-client privilege, the Court stated that corporate counsel should be free to communicate with employees at all levels of the corporate structure without uncertainty as to

4

whether their communications may be kept confidential.  *Id.* at 393
("An uncertain privilege, or one which purports to be certain but
results in widely varying applications by the courts, is little
better than no privilege at all."). Moreover, the ability to give
sound legal advice is contingent upon the lawyer's being fully
informed by the client.  *Id.* at 389.  Often, those in the best
position to inform corporate counsel of relevant information are
employees who fall outside of upper-echelon management.  *Id.* at
391.  Not extending attorney-client privilege to communications
with these employees undermines the policy of encouraging full
disclosure to enable the lawyer to give informed, sound advice.
*Id.* at 390.  Therefore, as long as any corporate employee is
sufficiently aware that he is seeking legal advice on behalf of the
corporation, and within the scope of his corporate duties, the
attorney-client privilege applies.  *Id.* at 394.

A.    Communications Between SunTrust Business Team and SunTrust Legal Team

SunTrust claims that all 108 documents listed on its privilege
log are protected by the attorney-client privilege.[1]  These

---

[1]    SunTrust claims that six of the documents identified on
the privilege log are also protected by the work-product doctrine.
(SunTrust Bank's Opp'n to Sid Mike's Mot. to Compel and/or for *In
Camera* Inspection, Ex. A.)  The work product doctrine protects
"written statements, private memoranda and personal recollections
prepared or formed by an adverse party's counsel in the course of
his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947).
Sid Mike has not challenged SunTrust's assertion of that these
documents are protected as work product.

documents consist of communications between the "Suntrust Legal Team" and the "Suntrust Business Team." (Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection at 1.)

Susan Craft is SunTrust's Senior Counsel. (SunTrust Bank's Opp'n to Sid Mike's Mot. to Compel and/or for *In Camera* Inspection at 2.) Craft and Sherea Roberts, a paralegal, comprise the "SunTrust Legal Team" (hereinafter "Legal Team"). (*Id.* at 3-4.) The "SunTrust Business Team" (hereinafter "Business Team") is composed of SunTrust corporate employees involved in the dispute with Sid Mike. (*Id.* at 3.) The members of the Business Team are Johnny Moore, Executive Vice President and Regional Commercial Line of Business Manager; Luke Yancy, Vice President and Commercial Relationship manager; Sandra Dodson, Commercial Banking Specialist; and Sandra R. Washington, Commercial Banking Specialist. (*Id.*) For the members of the Business Team to be protected by attorney-client privilege, it matters not whether these individuals are top executives or non-management personnel. *Upjohn*, 449 U.S. at 392 (eschewing labels when analyzing attorney-client privilege in corporate communications). What is important is whether they were seeking legal advice on behalf of the corporation and within the scope of their corporate duties. When seeking legal advice from corporate counsel on behalf of the corporate entity, the attorney-client privilege applies to all corporate employees, regardless of rank. *Id.* at 394.

1.   Communications Involving Susan Craft

SunTrust submitted the affidavit of Susan Craft as an exhibit to its response. (Doc. No. 60-3, Aff. of Susan S. Craft.)  In her affidivit, Craft states that her job at SunTrust is to provide legal counsel and advice to SunTrust's employees concerning the corporation's operations. (*Id.* at 2.) According to her affidavit, each member of the Business Team was involved with the Sid Mike/ Southern Stores account during the dispute over the accounts. Further, Craft states she only became aware of the accounts after the Business Team sought legal advice with respect to the underlying dispute in this case. (*Id.*) Before being consulted about the dispute, Craft "did not know that Sid Mike and Southern Stores had SunTrust accounts." (*Id.*)

Sid Mike, however, points out that Craft also holds the title of First Vice President at SunTrust. (Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection at 2.)  Based on her dual positions, Sid Mike argues it cannot determine in what capacity Craft operated when communicating with the Business Team. (*Id.* at 4.)  In support of this argument, Sid Mike relies solely on an April 7, 2006 letter addressed to opposing counsel which identifies Craft under her signature line as "First Vice President." (*Id.*, Ex. 3.)  From this single piece of evidence, Sid Mike draws the inference that Craft may have corresponded with the Business Team in her capacity as First Vice President, and not as Senior Counsel.

7

Therefore, Sid Mike claims the documents identified in the privilege log should be disclosed. This court does not agree.

The attorney-client privilege only applies if corporate counsel is functioning solely as an attorney giving legal advice to the corporation. *Edwards v. Whitaker*, 868 F. Supp. 226, 228 (M.D. Tenn. 1994). For instance, none of the Business Team's communications with Craft would be protected if, in these communications, she gave business or economic advice in her capacity as First Vice President. *See id.* Sid Mike, however, has pointed to no SunTrust production document to bolster its claim that it cannot determine Craft's capacity when communicating with the Business Team. Rather, Sid Mike's only support is a single item of correspondence from SunTrust with opposing counsel where Craft is identified as First Vice President under her signature. Unlike those on the privilege log, the April 7, 2006 letter is not an intra-company document between Craft and any member of the Business Team. The formal title used for correspondence between opposing parties is not enough to raise doubt regarding the scope of any other communication by Craft with the Business Team. Moreover, in the letterhead of the April 7, 2006 letter, Craft is referred to under her full title of "First Vice President and Senior Attorney." (Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection, Ex. 3.) Craft's affidavit states that she acted as SunTrust's lawyer with respect to the April 7, 2006 letter.

(Aff. of Susan S. Craft at 2.) Therefore, the documents in which Craft is identified as either Author or Addressee are protected under attorney-client privilege.

2.  Communications Involving Sherea Roberts

Sid Mike also argues that the emails listed on the privilege log for which Craft is neither author nor addressee cannot be privileged and should be produced. (Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection at 4.) Sherea Roberts is the author or addressee on 56 of the 58 documents not involving Craft. (SunTrust Bank's Opp'n to Sid Mike's Mot. to Compel and/or for *In Camera* Inspection, Ex. A at 4.) Sid Mike is aware that Roberts is a paralegal and may be eligible for attorney-client protection, but seemingly overlooks this fact when arguing for production of the documents.[2] (Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection at 2.)

Under Tennessee law, if "the person to whom the communication was made is a member of the bar of a court, *or his subordinate* and in connection with this communication is acting as a lawyer," then attorney-client privilege applies. *E.g. Royal Surplus*, 190 F.R.D. at 468 (emphasis added); *State v. Leonard*, No. M2001-00368-CCA R3-CD, 2002 WL 1987963, at *7 (Tenn. Crim. App. Aug. 28, 2002).

---

[2]     Indeed, Sid Mike cites the exact statute relied on by this court in finding that a paralegal qualifies for attorney-client privilege. (Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection at n.1.)

"Examples of such protected subordinates would include any law student, paralegal, investigator or other person acting as the agent of a duly qualified attorney under circumstances that would otherwise be sufficient to invoke the privilege." *Dabney v. Investment Corp. of America*, 82 F.R.D. 464, 465 (E.D. Penn. 1979) (citing 8 WIGMORE, EVIDENCE § 2301 (McNaughton rev. ed. 1961)).

Roberts is a paralegal for Craft. (SunTrust Bank's Opp'n to Sid Mike's Mot. to Compel and/or for *In Camera* Inspection at 3.) Craft's affidavit states that under her supervision, Roberts helped provide the Business Team with legal advice concerning the dispute with Sid Mike.[3] (Aff. of Susan S. Craft at 2.)  There is no proof to the contrary.  Therefore, the documents in which Roberts is identified as either author or addressee are protected under attorney-client privilege.

3. <u>Documents Nos. 41 and 50</u>

Sid Mike inaccurately asserts "the overwhelming majority of the emails are communications between Mr. Yancey and Ms. Dodson, who are not lawyers." (Mem. in Supp. of Mot. to Compel and/or for

---

[3]    Relying on *Edwards*, Sid Mike argues that attorney-client privilege is inapplicable where an attorney acts as a supervisor of non-legal employees.  (Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection at 3.)  Sid Mike's reliance on *Edwards* is improper for two reasons.  First and foremost, a paralegal is a legal employee.  Second, *Edwards* involved a defendant claiming attorney-client privilege for information obtained in counsel's capacity as a supervisor, when "the specter of a lawsuit had not yet arisen." *Id.* at 228.  In the present case, the Legal Team has no non-legal responsibilities in connection with the dispute and was contacted only after the dispute arose.  Thus, Sid Mike's reliance on *Edwards* is unpersuasive.

*In Camera* Inspection at 4.)  The privilege log, however, shows only two communications between Yancey and Dodson, Document Nos. 41 and 50.  (SunTrust Bank's Opp'n to Sid Mike's Mot. to Compel and/or for *In Camera* Inspection, Ex. A at 4.)  Indeed, the "overwhelming majority" of the documents on the privilege log are communications between the Legal Team and the Business Team.  SunTrust bears the burden of showing that Documents Nos. 41 and 50 are protected by attorney-client privilege.  *See Royal Surplus*, 190 F.R.D. at 474 ("The burden is on whoever asserts the privilege.").

SunTrust asserts that "the privilege log, along with Ms. Craft's affidavit, make it clear that those two documents are privileged."  (Doc. No. 60, SunTrust Bank's Opp'n to Sid Mike's Mot. to Compel and/or for *In Camera* Inspection at 8.)  However, neither the affidavit nor the privilege log demonstrates how communication between two non-lawyers may be covered by the attorney-client privilege.  Craft's affidavit merely states that Yancey and Dodson are members of the Business Team.  (Doc. No. 60-3, Aff. of Susan S. Craft at 2.)  The subject line of Document No. 41 states "Sid Mike—Legal department instructions re: accounts" and for Document No. 50 it states "Sid Mike—Account control dispute." (Doc. No. 60, SunTrust Bank's Opp'n to Sid Mike's Mot. to Compel and/or for *In Camera* Inspection, Ex. A at 4.)  While these descriptions sufficiently describe the nature of the document, they do not describe why attorney-client privilege applies to two non-

lawyers.  *See* FED. R. CIV. P. 26(b)(5)(A).  Sid Mike, therefore, has not met its burden of showing that the attorney-client privilege applies with respect to Documents Nos. 41 and 50 identified on the privilege log.

SunTrust, however, has also asserted work product protection as to Document No. 50.[4]  As previously stated, Sid Mike has not challenged SunTrust's assertion of that these documents are protected as work product.   Thus, Document No. 50 is still protected as work product and need not be produced but Document No 41 must be produced.

B.  <u>Sufficiency of the SunTrust Privilege Log</u>

Sid Mike next claims the SunTrust privilege log contains insufficient information to satisfy the requirements of asserting the attorney-client privilege.  (Doc. No. 57-2, Mem. in Supp. of Mot. to Compel and/or for *In Camera* Inspection at 1.)  SunTrust's failure to meet these requirements, Sid Mike argues, requires the production of all the documents.  Again, this court does not agree.

A party withholding information on the grounds of attorney-client privilege must comply with the requirements of Rule 26(b)(5)(A).  While the rule itself is not precise in what a party must do to claim attorney-client privilege, it does provide certain

---

[4]  There is a possibility that Document Nos. 41 and 50 may be the same document.  Both are dated March 31, 2006.  The time, 1:01 PM, on both documents are the same.  The parties to the documents are the same - Sandara Dodson and Luke Yancy  - but SunTrust has only asserted work product as to one document, No. 50, and not as to the other.

guidance.  FED. R. CIV. P. 26(b)(5)(A) states:

> When a party withholds information otherwise discoverable
> by claiming that the information is privileged or subject
> to protection as trial-preparation material, the party
> must: (i) expressly make the claim; and (ii) describe the
> nature of the documents, communications, or tangible
> things not produced or disclosed-and do so in a manner
> that, without revealing information itself privileged or
> protected, will enable other parties to assess the claim.

*Id.*  SunTrust has identified the Date/Time, Type, Subject, Author,

Addressee(s), and Other Recipient(s) for each document to which it

asserts a privilege.  Using this data Sid Mike is sufficiently able

to assess Suntrust's attorney-client privilege claim without

forcing SunTrust to reveal privileged information.   Therefore,

Suntrust's privilege log is adequate.

C.   *In Camera* inspection

In the alternative, Sid Mike asks this court to conduct an *in

camera* inspection of the privileged documents to determine whether

attorney-client privilege applies.  Because the court finds that

the privilege log is sufficient to assess the privileged nature of

the withheld documents, this court declines to exercise its

discretion to review the documents *in camera*.

III.   CONCLUSION

For the reasons stated above, the Motion to Compel and/or for

*In Camera* Inspection is denied in part and granted in part.  All

documents with a member of the Legal Team as either Author or

Addressee are protected by the attorney-client privilege and do not

require production. Document No. 41 is not protected by the

13

attorney-client privilege or the work product doctrine.  SunTrust shall produce Document No. 41 within fifteen days of the entry of this order.

IT IS SO ORDERED this 6th day of October, 2009.


   s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE